UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

UNITED STATES OF AMERICA
                              :

   -v-                             10 Cr. 476 (TPG)

                              :

ANTHONY GUARINO,
                              :

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S SENTENCING MEMORANDUM


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America

Chi T. Steve Kwok
John T. Zach
Assistant United States Attorney

   - Of Counsel -

The Government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Anthony Guarino.  In his sentencing papers, Guarino asks for a "tempered sentence" from the Court.  The Government–as well as the Probation Office–believe that a sentence within the Sentencing Guidelines in this case is appropriate.

## THE SCHEME

As set forth in the Indictment and summarized in the Presentence Investigation Report dated February 26, 2013 (the "PSR"), Guarino was the head of what was essentially a boiler room located in Manhattan, New York.  Beginning in or about 2000, that boiler room – called variously Powercom Energy Services Corp. and Empire Energy Services Corp. (collectively referred to herein as "Powercom") – began selling securities in Realcast to unwary investors throughout the United States.  Many of the employees at Powercom, including Guarino, had previous criminal convictions for fraud and other offenses and the company employed high-pressure sales tactics to lure investors.  Powercom made its money through the collection of exorbitant commissions – typically ranging from 40% to 50% of the price of the security – which were not disclosed to investors.  In short, Powercom stole 40 to 50 cents on every dollar that was invested through them.

Of course, nobody at Powercom or Realcast disclosed these commissions to Realcast's investors.  For almost a decade, Powercom raised capital for Realcast and profited from the commissions that were generated, despite the fact that Realcast was, at best, a floundering company.  Over time, Realcast's lack of success became almost a joke to the boiler room members who were touting its stock to investors.  For example, on or about December 9, 2009, one of the salespeople working at Powercom was recorded as saying that his "mother will come out of the grave" before Realcast is a successful company.  That same salesperson, only weeks

later, then told an unsuspecting investor that he (the salesperson) was "comfortable" telling the investor that their Realcast shares would soon sell for $8 or $10 a share on the low end, and $15 to $18 on the high end.  It was these tactics that brought in the investor funds which fed the illegal commissions provided by Realcast to Powercom and which paid for the operating expenses of Realcast.

## GUARINO'S ROLE AND CRIMINAL HISTORY

As set forth in the Indictment and the PSR, the defendant was the manager of Powercom, which hawked Realcast shares to unsuspecting victims across the country.  The boiler room essentially stole 40 to 50 cents on every dollar that the victims in this case invested in Realcast.  Indeed, Powercom was essentially a den of thieves, populated by numerous convicted felons and overseen by Guarino.

Significantly, the instant case is Guarino's <u>fourth</u> federal criminal conviction for fraud.  As the PSR are makes clear, Guarino repeatedly has demonstrated himself to be ready, willing and able to engage in this type of criminal activity.

In the early-1980s, Guarino participated in an investment fraud scam involving a "the purchase of strategic metals."  (PSR ¶ 74).  Essentially, Guarino and others told investors that they were purchasing these metals in order to make a large profit when, in fact, they were simply pocketing the money.  Guarino was sentenced to three years of imprisonment for his involvement in the fraud.  (PSR ¶ 73).

In the mid-1980s, Guarino was part of another boiler room that defrauded investors and used investor funds to "pay commissions and operating expenses" and the funds also were "pocketed by those who headed the companies."  (PSR ¶ 77).  Guarino was sentenced to five years' imprisonment for his participation in that fraud.  (PSR ¶ 76).

Thereafter, in the late-1980s and early-1990s, Guarino was part of a separate boiler room located on Long Island. This fraud amounted to over $1,500,000 in losses and Guarino was sentenced to 20 months' imprisonment for his participation in it. (PSR ¶¶ 78-79).

The instant fraud began in the early 2000s. Thus, even after three federal fraud convictions, Guarino still had not learned to change his criminal ways. Rather, instead of turning his life around after his last conviction, Guarino formed Powercom, hired a bunch of other fraudsters, and continued to steal from unsuspecting victims by touting shaky companies and taking in illegal and excessive commissions. In sum, Guarino has spent the better part of the last 30 years either engaging in fraud or serving out prison sentences.

* * *

In his sentencing submission, Guarino makes two arguments – one tragic, the other misguided.

First, it is not disputed that Guarino's wife is seriously and tragically ill. It also appears that Guarino is a devoted, caring and dutiful husband on whom his wife relies. However, it was Guarino's decision to continue to lie and steal that has put himself and his family in such an awful situation. This is his fourth federal fraud conviction and there are many victims in the wake of Guarino's criminal conduct, including his family and the numerous investors he defrauded.

Second, Guarino argues that, by virtue of appealing one of his prior convictions, his criminal history is overstated. The Government disagrees. The fact that Guarino has three prior federal fraud convictions speaks for itself – he is a career fraudster. If anything, the three prior convictions emphasize the audacity that Guarino has shown in committing the instant offense, a large-scale fraud that is now his fourth conviction. The calculation of his criminal history points

is, under Section 3553(a), largely irrelevant in light of his repeated participation in fraud schemes over the last 30 years.

In sum, given Guarino's central role in the crime, his prior criminal history, and the extent of the grief he caused the victims in this case, the Government respectfully submits that a Guidelines sentence is appropriate in this case notwithstanding his wife's tragic health problems.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the defendant Anthony Guarino be sentenced to a term of imprisonment within the applicable Guidelines range.

                                         Very truly yours,

                                         PREET BHARARA
                                       United States Attorney
                                       Southern District of New York

By:        /s                   
     John T. Zach
     Chi T. Steve Kwok
     Assistant United States Attorneys
     (212) 637-2410/2415

Copy to:
Matthew J. Rosenblum, Esq.
Matthew Mari, Esq.
(via ECF and e-mail)