D319guas

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   UNITED STATES OF AMERICA,

4         v.                  10 CR 476 (TPG)

5   ANTHONY GUARINO,

6          Defendant.

7   ------------------------------x

8                       New York, N.Y.
                       March 1, 2013

9                       3:30 p.m.

10

11   Before:

12                HON. THOMAS P. GRIESA

13                       District Judge

14                  APPEARANCES

15   PREET BHARARA
       United States Attorney for the

16       Southern District of New York
   JOHN ZACH

17       Assistant United States Attorney

18   MATHEW J. MARI
       Attorney for Defendant

19   MATTHEW J. ROSENBLUM

20       Attorney for Defendant

21

22

23

24

25

2

D319guas

1          (In open court; case called)

2          MR. ZACH:  Good afternoon, your Honor.

3          John Zach for the government.

4          MR. MARI:  Your Honor, Mathew Mari and Matthew

5  Rosenblum for the defendant Anthony Guarino.  We are ready to

6  be sentenced, your Honor.

7          THE COURT:  Have you gone over the presentence report

8  with your client?

9          MR. MARI:  Yes, your Honor.

10          THE COURT:  And I assume your position is set forth in

11  the sentencing memorandum, right?

12          MR. MARI:  Yes, your Honor.

13          THE COURT:  What would you like to add, please?

14          MR. MARI:  Your Honor, Mr. Rosenblum, who came into

15  this case before the plea, and has been cocounsel with me, and

16  has handled all of the sentencing matters, would like to make a

17  statement to the court.

18          THE COURT:  Of course.

19          MR. ROSENBLUM:  Thank you, your Honor.

20          Your Honor, before I begin my remarks I just want to

21  say a couple thank yous.  I'm Anthony's brother-in-law so

22  there's a reason why I'm here in this court and not being paid,

23  but Mathew Mari bears no relation to him and he's made all

24  these court appearances and done all this work, yeoman like

25  work in defense of my brother-in-law.  I just want to thank him

2

1   for that.  He started out as a family friend helping in an

2   arraignment and he kind of got roped in, first, to help Anthony

3   and ultimately to help Judy and the whole family and I thank

4   him from the bottom of my heart.

5        I'd also like to thank AUSA John Zach who made a kind

6   of difficult situation for me -- I'm not in a habit of

7   representing family, loved ones -- he's been professional; he's

8   been courteous.  We haven't always agreed, but it's always been

9   aboveboard.  And I want to thank him because he's just given me

10  a great comfort in being able to do my job here.

11       Your Honor, when I married Georgette, who is in the

12  courtroom and sent the court a letter, in 1993, that's

13  Anthony's sister, Anthony did not attend the wedding.  He was

14  in jail.  Judy, a healthy Judy, attended the wedding.  I had

15  spoken to Anthony on occasions after his incarceration.  And I

16  think I got to understand him then.  And I think I know him

17  now.

18       Your Honor, Judy's cancer -- Judy's diagnosis of

19  cancer in 2008 did for Anthony what six years of jail in the

20  late 1980s and early 1990s did for him.  When she was diagnosed

21  with cancer, it humbled him.  It brought him to his knees.  It

22  made him hit rock bottom.  And I think it was just one of those

23  life-changing events.

24       And that's two years before he was arrested on the

25  matters that bring us to court today.  And that is why, your

1    Honor, almost every other defendant in this case came to plead

2    guilty in a timely fashion, I think with the exception of

3    Barbarino, it was Anthony who went around -- not because he had

4    an expectation of getting a lower guideline or less criminal

5    history points or anything like that.  He probably did hope --

6    and I spoke to Mathew Mari -- at one point he thought there was

7    a deal on the table.  I spoke to AUSA Zach and there wasn't a

8    deal on the table.  But Anthony diligently worked the

9    codefendants and said what's right is right.  These victims

10   have been through enough.  And I think it's uncontroverted that

11   it was he who brought about an almost global plea without

12   getting global credit.  And that's not something the Anthony I

13   met, after I married Georgette, would have ever, ever

14   contemplated doing.  He was much too proud.

15        I'd just like to point out that, as I'm sure the court

16   is aware, an acceptance of responsibility runs two ways in this

17   case.  It runs to the victims -- and I would note that nobody

18   is here in attendance or has been given -- furnished letters

19   for this occasion.  But that two letters were furnished to the

20   court, one by Alan Grossman, which I forwarded earlier this

21   week, I think.  And one by a George W. who is a lawyer.  And

22   both of them have indicated that Anthony in their opinion

23   should not be given jail time considering everything they knew

24   about him.  And I could not put it in better words than they

25   have.  And I'll rest upon the letters.

1          But I've been doing criminal law for about 28 years.

2    I can't remember victims who have been swindled out of millions

3    of dollars ever coming to the aid of one of the people who is

4    alleged to have done, and who actually pled guilty, to a count

5    in the indictment regarding that.

6          I understand, your Honor -- I attended Mr. Kimmel's

7    sentencing.  And I agree with the court that this is -- it's

8    kind of not a bad guideline for the amount of damage that's

9    been done.  The minimum is 46 months to 57 on the maximum.

10   Considering people are out so much money, one can certainly say

11   that the guideline is better than other guidelines from a

12   defense point of view.

13         But, the crux of why we're here is:  What about Judy?

14   In his memorandum that Mr. Zach, the government sent to me last

15   night, it says that Judy's situation is tragic, that Judy is a

16   victim of Anthony, that she is just one of his many victims.

17         But the other victims in this case are Anthony signing

18   IOUs and making promises of restitution.  What about Judy?  Why

19   do we turn our backs on Judy when she is perhaps the only

20   victim that he really can help?

21         If he is to be incarcerated, the likelihood of her

22   being able to live alone is not good.  Probation indicated that

23   they -- I think they met with Judy for ten minutes on Monday

24   and they made a determination that she's very dependent on him

25   but they're not sure that -- whether or not she -- I think they

1  made the statement all victims, all defendants' families

2  suffer.  But the point is if she's a victim, shouldn't the

3  government be trying to help this victim as much as the

4  government is trying to help the other victims?  Shouldn't the

5  government be saying to the defense counsel:  Wait a second.

6  This guy is doing one -- even if we don't like him and even if

7  he's a liar and a cheat and a swindler and a this and a that,

8  isn't he doing one good thing?  Why should we take him out of

9  her life and put her in a situation where she probably can't

10  take care of herself?

11       When probation went to her house for ten minutes she

12  was sitting on a couch and they thought she looked okay, I

13  guess.  But it took him three hours to get her on the couch.

14       Your Honor, these are very proud people.  Anthony

15  would never hide behind anybody to try to get out of jail.

16  That's not the Anthony of old and that's not the Anthony of

17  now.  But he just has no other way to try to help his wife.

18       So, we come to criminal history now.  In 1984 Anthony

19  was arrested -- convicted in 1984.  He was actually sentenced

20  to three years in jail.  Had he done that sentence when he was

21  slated to do it originally, then more than fifteen years would

22  have passed until the time of his next arrest and he would be

23  in criminal history III.  But through a series of

24  not-so-complicated things, but basically because he appealed it

25  and it tagged on, and then he had another problem, it kind of

1    got attenuated.  And we're within, just within the fifteen-year

2    timeframe.

3         So I'm asking the court to please consider -- and it's

4    not -- I'm not saying he's the greatest guy in the world to be

5    going down from a history IV to a history III, but I think it's

6    appropriate for him to be a history III.

7         3553(a) permits the court to do -- to give more weight

8    to some factors than other factors in considering a variance.

9    Even if Judy's condition doesn't significantly deteriorate the

10   next several years -- she's had 29 or 30 lymph nodes removed.

11   She's got lymphedema in her leg.  She's got a whole bunch of

12   other conditions that I can't even say or pronounce.  And she's

13   got situations happening all the time.  She went to physical

14   therapy one day and wound up having problems with her --

15   slipped disk or something like that.  She had to get -- after

16   probation came to her this week, she had to go into

17   Sloan-Kettering -- into therapy.  Then the next day she had to

18   go to Sloan-Kettering because something had to be removed from

19   her because something from the chemotherapy was clogging up and

20   her arteries could have got clogged and on and on.

21        If Anthony is not there, there's nobody that -- she

22   can't afford anybody to be at her beck and call for 24 hours.

23   And she certainly doesn't know anybody.  And even with my

24   loving family, we just can't do it.

25        I just don't understand, your Honor, why -- I

D319guas

1  understand why the government might not agree to a variance or

2  to a departure.  But I don't understand how they can say that

3  her situation is tragic, it's obvious it's going to get worse

4  without him, but it's his fault, he created the situation.

5        Well, he created -- that could be said of any

6  defendant and any victim.  But he can fix her situation.  It's

7  not like he's writing out an IOU for a million dollars to

8  someone else that will never mean anything.  He can take her to

9  the doctor.  He can get her up.  He can dress her.  He can comb

10  her hair, put her on the couch and make her look like she has

11  nothing wrong with her so that when probation comes they can

12  say she might be able to take care of herself.  But it doesn't

13  mean that she can take care of herself.  And I don't see how

14  the people don't see that.

15        And yeah, he did some bad things.  And yeah, he didn't

16  learn his lesson.  But I tell you he's different and he's

17  humbled and he's not perfect but for her, for what she needs,

18  he is perfect.

19        I asked Anthony to make a mini diary beginning Monday

20  of this week to document what he does each day for Judy, this

21  week, to help her function in a way that she can get by each

22  day.  And I hope you did it.  See, he even listens to me, your

23  Honor.  I just want to thank you for your time.

24        THE COURT:  Does the government have anything to add?

25        MR. ZACH:  Very briefly, your Honor.

D319guas

1          The government submitted a sentencing memorandum,

2     filed last night.  Look, there is no denying it's tragic and

3     that Mr. Guarino's wife is gravely ill.  And it seems clear

4     that Mr. Guarino is a good and dutiful husband toward her.

5          THE COURT:  Why don't you sit down because the

6     microphone doesn't reach very well.

7          MR. ZACH:  It's clear, I think, that Mr. Guarino is a

8     dutiful and loving husband toward her.  And it's certainly hard

9     to hear Mr. Rosenblum talk about these things because you know

10    he's part of that family.  And they seem to be very close,

11    loving family.

12         But what the problem here is that Mr. Guarino has

13    spent most of his life doing this kind of thing.  This is the

14    fourth federal fraud conviction that he's had.  He's

15    essentially, since the early 1980s until today, been involved

16    in these types of scams.  And in the wake of the scams, there's

17    lots of folks that have lost lots of money.  And it's something

18    that needs to be deterred.  And Mr. Guarino was the guy that

19    ran this boiler room in New York.

20         And I don't mean to take away from the fact that he's

21    a good husband and there's going to be real consequences to

22    this family were he to go to prison.  But it's a situation that

23    Mr. Guarino made.  And he made it after a lifetime of doing

24    this kind of thing.  And while has tragic consequences on the

25    family, that's something that Mr. Guarino is going to have to

D319guas

1    live with because it's a decision he made when he decided to do

2    this sort of fraud.  And it's horrible.  And it's tragic.  But

3    it's something that Mr. Guarino carries on his shoulders.

4          And while it may seem difficult and harsh for the

5    family, for his wife to have to go through this very difficult

6    part of her life with her husband away in prison, that is what

7    is required here because of the extent of the crime committed

8    by Mr. Guarino, because of his criminal history, and because he

9    is ultimately the one that made this decision.

10          THE COURT:  Mr. Guarino, would you like to make any

11   statement.

12          THE DEFENDANT:  Yes, sir.  Thank you, your Honor.

13          MR. MARI:  Judge, should he stand or sit?

14          THE COURT:  It would be better to sit.  These

15   microphones are a little awkward.

16          THE DEFENDANT:  Thank you, your Honor.

17          I stand before you today ashamed that I betrayed the

18   trust people put in me by not disclosing the whole truth about

19   their investment which I solicited from them.  I'm deeply sorry

20   for my actions.  And I know I can never repair the damage I've

21   caused them.  As you can see from the letters, from some of the

22   victims, I did try in some cases to do the best to address

23   their issues.  The sad truth is that when I was doing what I

24   was doing, I justified it in my mind by wrongly thinking that's

25   just the way business is done on Wall Street.  I was wrong.

D3l9guas

1    And believe me, I know it was wrong now more than ever.

2         I'm guilty of misleading investors and having them

3    suffer losses, which is shameful.  For whatever it's worth, I

4    did not stockpile a lot of money or live a life of luxury

5    because of these crimes whatsoever.  My family never benefited

6    from my actions but only suffered.  I betrayed the trust of my

7    family, especially my wife Judy, who has been battling this

8    cancer for four-and-a-half years.  She suffered a lot because

9    of the position I put her in and I put myself in.

10         I know you must punish me for my crime.  But I ask for

11   mercy for my wife who has a disease that, by all means, is a

12   death sentence.  I am all she has and she depends on me for

13   everything.  A day doesn't go by that I'm not helping her with

14   her physical therapy, for compression for lymphedema, shopping,

15   cooking, pharmacy, traveling.  When she has to go to physical

16   therapy, she cannot travel on public transportation.  And the

17   handicap van that would be able to take her would take several

18   hours and because of her acute lymphedema and nerve damage of

19   18 months of chemotherapy, all of that would be for nothing

20   because of the damage of just the timeframe going back and

21   forth from physical therapy.

22         Our daughter, Judy's daughter, can't help because

23   she's been hospitalized three times in 2012 for a bipolar

24   disorder and has undergone fifteen treatments of electroshock

25   therapy and can't care for our granddaughter, which falls on my

D319guas

shoulders when these events happen. My granddaughter stayed

with us in 2012 more than six times for an excess of a week.

If I were to go to prison I can't help think how it would be

for Judy.

She also has a syndrome called Lynch syndrome. It's a

defective gene that causes multiple cancers in persons. Five

of her siblings have had different -- various different types

of cancers, as well as her mother and father, who both died

from this illness, as well as a niece. All they are doing here

is waiting for another cancer to turn up. And basically

they're waiting for the other shoe to fall.

Please do not be offended that I'm asking you for such

a sentence such as home confinement or probation. It's a lot

to ask. And if you grant this giant heartfelt request, I'll

turn my life around and do good for my family and for others.

I would never use Judy's illness and situation just to

avoid prison. I've done time, as you know, almost six years,

and never hid behind anyone. Sure, I didn't wanted to go to

jail, but I accepted it. My wife was healthy.

My concern is really for her. I do everything for

her.

Now, as Matthew said, he wanted me to do a brief

journal just to give you an overview of what I do.

On Monday, the day that probation came to our home at

9:15, we were up at 6:00 a.m. And what I do is I unwrap my

1   wife's compression garments, give her a lymphatic massage, and

2   then I drive her to Memorial Sloan-Kettering for her daily

3   appointment physical therapy.

4       When both those treatments are completed at 11:45, we

5   go to a physical therapy doctor and get her medication.  Then

6   we bring her home.  I bring her home at around 2:00 p.m.  She

7   takes her oxycodone, give her more lymph massage, 30 minutes,

8   rewrap, and bedtime medication at night.

9       Wake up at 4:30 -- on Tuesday we woke up at 4:30 and I

10  did the same procedure and this time had to bring her to

11  Memorial Sloan-Kettering for a surgery to remove a power port

12  that could create a problem because of it being backed up.

13      On the 27th, I'm up at 6:00 a.m.  I unwrap the

14  garments.  I do all the same techniques, the massage.  I give

15  her all the medication.  I cook for her.  I shop for her.  And

16  I put her to bed.

17      I've accepted my responsibility by pleading guilty.

18  And I did my best to encourage every codefendant to do the

19  same, which all have except one.

20      I live a very modest life.  And my only concern is

21  caring for Judy and her daughter and our granddaughter.

22      I know it's your job to balance society's interest in

23  punishing me for my bad acts and balancing Judy's need to have

24  me attend to her on a daily basis.

25      I humbly accept my responsibility and accept my

1  responsibility to society and to my wife and ask you to let me

2  continue to take care of her despite what I've done.

3          Thank you for listening.

4          THE COURT:  This case presents grave difficulties.

5  The criminal conduct of fraud in connection with the sale of

6  purported securities or securities occurred beginning in about

7  2000 and going until the fall of 2010.  Earlier there had been

8  convictions for the same thing and prison time.  The operation

9  was really supervised by Mr. Guarino and in a sense he's most

10  culpable of the various defendants who have been before me.

11  The losses due to his conduct are very large, losses to

12  victims.

13          The sentence guidelines have a range starting with 46

14  months.  That's three years and ten months.  For this kind of

15  criminal conduct with that background, this is a very modest

16  penalty.

17          Now, I have no doubt of the seriousness of the

18  condition of Mrs. Guarino, whom I'll speak of as Judy because

19  that's the way Judy is -- that's the way all the papers do.

20  And I have no doubt about Judy's serious condition.  I have no

21  doubt at all about the fact that the defendant Guarino is

22  spending great time and effort in caring for his wife and his

23  wife depends upon him greatly.  But, the criminal conduct

24  occurred to some extent while this illness was manifesting

25  itself.  The diagnosis occurred in 2008.  And this criminal

1   operation kept going until 2010.

2           What I'm now going to say is obvious but I'll say it

3   anyway.  There was a clear way to avoid any danger of

4   imprisonment on top of what had been experienced some years

5   earlier and that was to stay clear of further criminal conduct.

6   That's the way to spare the families, to make sure that Guarino

7   was home, ready to care for his wife.  That's the way to make

8   sure that that occurs.  But Guarino did not do that.

9           Of course, the court has the deepest sympathy with

10  Judy and her need to be cared for by her husband.  But, this

11  court also has a duty under the law and a duty to the public

12  who are not here.  There's a public out there who needs to be

13  protected against fraud and boiler room operations.  There is a

14  public that needs to be protected.  And the court cannot forget

15  that.  Severe losses were incurred.  The court cannot forget

16  that.  In my view, the guideline range or the sentence at the

17  bottom of the guideline range, at least, represents a moderate,

18  modest approach to the sentence in this case.  Three years and

19  ten months.  One can imagine a far more severe penalty for what

20  was done.  But here we have a modest, moderate penalty in this

21  bottom of the guidelines 46 months.

22          A judge inevitably wishes to fashion a sentence, if

23  possible, which does not harm innocent people.  And Judy is an

24  innocent person.  But experience shows that that is not always

25  possible.  And both experience and reasoning show that the real

D319guas

1    problem is the commission of the crime.  That's what upsets the

2    normal, healthy lawful arrangement of lives.  It's the

3    commission of the crime.

4         I feel that it is appropriate in carrying out my

5    responsibility under the law and in consideration of the

6    factors in Section 3553, principally the nature of the conduct,

7    it is my belief that a sentence of 46 months is an appropriate

8    sentence and that is the sentence that I impose.

9         Now, I wish to delay the surrender date not

10   indefinitely but for some reasonable period of time while care

11   for Judy is arranged.  And in New York City and with the

12   institutions here and other ways there, of course, needs to be

13   provision for Judy's care.  And consequently I will delay the

14   surrender date for three months until May 1, 2013 to allow that

15   to be done.

16        MR. ROSENBLUM:  Your Honor --

17        THE COURT:  Just one minute.

18        Yes.

19        MR. ROSENBLUM:  Your Honor, Anthony has indicated to

20   me that --

21        THE COURT:  I can't hear you.

22        MR. ROSENBLUM:  Anthony has indicated to me that Judy

23   has a lymphedema laser procedure in July.  Would it be possible

24   to go into August?

25        THE COURT:  Yes, it would.

D319guas

1           MR. ROSENBLUM:  Thank you.

2           THE COURT:  August 1.

3           MR. ROSENBLUM:  Thank you so much.

4           THE COURT:  Was there a written plea agreement with

5   any waiver in it?

6           MR. ZACH:  There was, your Honor.

7           THE COURT:  Does this sentence --

8           MR. ZACH:  A sentence at the low.

9           THE COURT:  Does this create the circumstances for a

10  waiver?

11          MR. ZACH:  It does, your Honor.

12          THE COURT:  The defendant I'm sure understands that.

13  I need to -- I was concentrating on the term.  But, of course,

14  there needs to be consideration of supervised release and a

15  special assessment.

16          This is a one count situation, right.

17          MR. ZACH:  Yes, your Honor.

18          THE COURT:  The prison sentence will be followed by

19  two years supervised release.  And there will be a hundred

20  dollar special assessment.

21          MR. ZACH:  Your Honor, it's also four hundred thousand

22  dollars in restitution.  And the government will submit an

23  order to you.

24          THE COURT:  All right.  I'll sign the order.

25          That concludes our proceeding.

D319guas

1          MR. ROSENBLUM:  Excuse me.  One other matter.  I'm

2     sorry but I didn't hear the court rule on the criminal history.

3          THE COURT:  I agree with the criminal history

4     calculation in the presentence report.

5          MR. ROSENBLUM:  Thank you, Judge.

6          MR. MARI:  Your Honor, one other matter for the record

7     I don't think that we indicated on the record that defendant

8     would be allowed to self-surrender to a designated institution

9     by letter.

10          THE COURT:  He will be permitted to do just exactly

11     that.

12          MR. MARI:  Thank you very much, your Honor.

13          MR. ZACH:  Thank you, your Honor.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25